Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 850
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

PROPOSED ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE | § § | |
| LS MOTORCARS, LLC. | § § § § | Case no.21-40441-11 |
| | § | CHAPTER 11 |
| DEBTOR | § | |

**PLAN OF REORGANIZATION OF LS MOTORCARS, LLC  PURSUANT TO SECTION 1190**
**OF THE BANKRUPTCY CODE DATED JUNE 24, 2021**

TO:   ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I
INTRODUCTION

Identity of the Debtors

LS Motorcars, LLC ("Debtor") filed its voluntary Chapter 11 case in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Court") on March 26, 2021. The Debtor operates a company selling used cars in Garland, Texas. The Debtor proposes to restructure its current indebtedness and continue its operations to provide a dividend to the unsecured creditors of Debtor.

### Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. There are different types of Chapter 11 designations. In this case, the Debtor has chosen to proceed under a Subchapter V- Small Business Debtor Reorganization ("Subchapter V").  Pursuant to a Subchapter V Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders.  Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case.  A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor.  After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan that has not accepted the plan.

### Explanation of the Process of Confirmation

Acceptance of the plan by the Creditors and Equity Interest Holders is important.  In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan.  As set forth above,  a Subchapter V Chapter 11  does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

### Voting Procedures

**Unimpaired Class**.  Claimants in Classes 1 and 7 are not impaired under the Plan.  Such Class is deemed to have accepted the Plan.

**Impaired Classes**.  The Class 2 through 6 Claimants are impaired as defined by Section 1124 of the Code.  The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2 through 6.  Each holder of an Allowed Claim in Classes 2 through 6 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 850, Dallas, Texas 75251. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

### Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with at least as much as they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

### ARTICLE II
### DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1. "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is

no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.  This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.  When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

      3.      "**Allowed Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

      4.      "**Allowed Unsecured Claim**" shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.  This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

      5.      "**Bar Date**" shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

      6.      "**Buy Here, Pay Here**" shall mean those Motor Vehicle Retail Installment Contracts where the payments for the vehicles are made directly by the purchaser to the Debtor.

      7.      "**Case**" shall mean this Chapter 11 case.

      8.      "**Claim**" shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off.  Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

      9.      "**Claimant**" shall mean the holder of a Claim.

      10.      "**Class**" shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

11.     "**Code**" shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

12.     "**Confirmation**" or "**Confirmation of this Plan**" shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

13.     "**Confirmation Date**" shall mean the date on which the Court enters an Order confirming this Plan.

14.     "**Court**" shall mean the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

15.     "**Creditor**" shall mean any person having a Claim against Debtor.

16.     "**Debt**" shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

17.     "**Debtor**" shall mean LS Motorcars, LLC.

18.     "**Disbursing Agent**" shall mean the Reorganized Debtor even in the event of a confirmation under 11 U.S.C. §1191(b).

19.     "**Effective Date**" shall mean thirty days after the Final Confirmation Date.

20.     "**Entity**" shall include Person, estate trust, governmental unit and the United States Trustee.

21.     "**Equity Interest Holders**" shall mean holders of the equity interests in the Debtors.

22.     "**Final Confirmation**" shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

23.     "**Order Confirming Plan**" shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

24.     "**Petition Date**" shall mean the date on which the Debtor filed this proceeding, March 26, 2021.

25.     "**Plan**" shall mean this Plan of Reorganization in its present form or as it

may be amended, modified or supplemented.

26. **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

27. **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

28. **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

29. **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

30. **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

31. **"Substantial Consummation"** shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

32. **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

33. **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

III
REPRESENTATIONS

NO REPRESENTATIONS CONCERNING THE DEBTOR IS AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING

YOUR DECISION ON HOW TO VOTE ON THE PLAN.  ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES.  IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.  THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.  THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE IV

### FINANCIAL PICTURE OF THE DEBTORS

### Financial History and Background of the Debtor

Robert Morales started in the car business is 1999. He operated as a sole proprititor for 15 years. In 2014 he set up LS Motorcars, LLC and moved the operations to Farmers Branch,. Texas. During this time the company shifted from sell primarily low cost vehicles to more expensive cars. The business continued to grow and the Debtor then relocated to a larger facility in Addison, Texas. Over the years the Debtor financed the operations though floor plan lenders. In late 2016 against his better judgment,  Mr Morales agreed to allow an individual Patrick Gillean ("Gillean") to invest funds into the business. Ultimately, Gillean invested about $1.5 million in the Debtor. The Debtor was unable to repay Gillean and Gillean sued the Debtor. In 2020 the Debtor moved to a smaller location in Garland, Texas.

As a result of a settlement the Debtor was obligated to pay Gillean $15,000 per month. When the pandemic hit the Debtor was unable to make the payments and Gillean threatened to close down the business. The Debtor field this case to allow it time to restructure all of its debts.

### Future Income and Expenses Under the Plan

The Debtor filed this case on March 26, 2021 with the goal of returning to complete operations and proposing a repayment plan for its creditors.  The Debtor's business depends on customers having the financial ability to purchase vehicles. Attached hereto as Exhibit "**A**" are projections of gross income, expenses and operating income for the next year.  It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 100% by Roberto Morales. After confirmation Mr Morales will remain the president and sole owner. Mr. Morales will receive a salary of $2,500 per week.

### ARTICLE V.
### ANALYSIS AND VALUATION OF PROPERTY

The Debtor operates a company that sells used cars. The Debtor does maintain inventory. The Debtor maintains accounts receivable in the form of "Buy Here, Pay Here" notes. The Debtor maintains some office furniture. The majority of the Debtor's vehicles are subject to financing by third parties or are being sold on consignment.  The value of the Debtor's assets, if liquidated, would not cover the current secured and administrative creditors. The Debtor believes there is very little likelihood of any dividend to the unsecured creditors in the event of a liquidation of the assets of the Debtor.

A liquidation analysis of the Debtor's assets is attached hereto as **Exhibit "B".**

### ARTICLE VI
### SUMMARY OF PLAN OF REORGANIZATION

The Debtor will continue in business. The Debtor's Plan will break the existing claims into 7 categories of Claimants. These claimants will receive cash payments over a period of time beginning on the Effective Date.

**Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan. Any class of Claimants failing to vote on this Plan shall be deemed to have accepted this Plan in its present form or as modified or amended as permitted herein.

**Class 1 Claimants (Allowed Administrative Claims of Professionals, Subchapter V Trustee and Landlord Claim)** are potentially impaired and will be paid in cash and in full on the Effective Date of this Plan if confirmed under 11 U.S.C. §1191(a) or over the life time of the Plan, if confirmed under 11 U.S.C. §1191(b). Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. All Class 1 claims will be paid in full under 11 U.S.C. § 1191(e) in the event of confirmation under 11 U.S.C. § 1191(b). The Debtor's case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $25,000.

The Class 1 Claimants are potentially impaired under this Plan.

**Class 2 Claimants (Allowed Ad Valorem Tax Creditors)** are impaired and shall be satisfied as follows: Dallas County has filed a Proof of Claim asserting ad valorem taxes. Dallas County has asserted claim in the amount of $39,119.63. In the event the claim is allowed as filed, Dallas County shall receive post-petition pre-Effective Date interest at the state statutory rate of 12% per annum and post-Effective Date interest at the rate of 12% per annum. The Debtor will pay any Allowed Class 2 claimant in 60 equal monthly installments commencing on the Effective Date. The Taxing Authorities shall retain their statutory senior lien position regardless of other Plan provisions, if any, to secure their Tax Claims until paid in full as called for by this Plan.

The Class 2 Creditors are impaired under this Plan.

**Class 3 Claimant (Allowed Secured Claims of Next Gear Capital, Inc.)** are impaired. The Debtor executed that certain Demand Promissory Note and Loan and Security Agreement ("Note") in favor of Next Gear Capital, Inc. ("Next Gear"). Pursuant to the Proof fo Claim filed by Next Gear as of the Petition Date the amount owed to Next Gear was $39,490.79. The Note is secured by certain vehicles financed by Next Gear under the terms of the Note and by that certain UCC-1 timely

filed by Next Gear. During the course of this proceedings in accordance certain Orders regarding use of Cash Collateral, the Next Gear claim has been paid down. As of the date of this Plan, the Debtor believes the amount due Next Gear is $7,080. The Debtor maintains one vehicle that was financed by Next Gear. That vehicle is a 2015 BMW. At the current time, that vehicle is at a repair shop to replace a damaged engine. In the event the vehicle can the repaired prior to the Effective Date, the vehicle will be sold prior to the Effective Date and the proceeds will be paid to Next Gear to pay any outstanding indebtedness to Next Gear. In the event the vehicle cannot be repaired and sold prior to the Effective Date, the Debtor shall pay Next Gear monthly payments of $1,000 commencing on the Effective Date until the Next Gear indebtedness is paid in full.

Class 3 Claimants are impaired under this Plan.

**Class 4 Claimants (Allowed Secured Claims of Good Floor Loans, LLC)** are impaired and shall be satisfied as follows: On or about December 20, 2019, the Debtor executed that certain Loan and Security Agreement ("Note") with Good Floor Loans, LLC ("Good"). The Note was secured by that certain Security Agreement of even date and that certain UCC-1 Financial Statement filed of record. Good has filed a Proof of Claim in the amount of $453,270.42. The Debtor disputes this amount. The Allowed Secured Claim of Good shall be paid in full as follows: On the Effective Date, the Debtor will deliver to Good, Buy Here Pay Here Notes with a payment stream value of $150,000 with a remaining term no longer that 42 months. These Buy Here Pay Here Notes will be subject to verification that they are in good standing and Good will be transferred the titles to the Buy Here Pay Here notes transferred to Good in accordance with the terms of this Plan. The Debtor shall pay the balance of the Good Allowed Secured Claim over a period of 60 months with interest at the rate of 5% per annum. All other terms and conditions of the existing Note shall remain in full force and effect except as modified by this Plan.

The Class 4 Creditor is impaired under this Plan.

**Class 5 Claimants (Allowed Claims of Texas Security Bank)** are impaired and shall be satisfied as follows: On or about October 1, 2019, the Debtor executed that certain Promissory Note in the original principal amount of $415,000 ("Note") in favor of the Texas Security Bank ("TSB"). The Note was secured by that certain Business Loan Agreement dated October 1, 2019. Additionally, the Debtor executed that certain Commercial Security Agreement ("Agreement") dated March 6, 2020 providing security in certain vehicles more fully described in the Agreement. The Debtor further executed that certain Commercial Guaranty ("Guaranty") of the obligation of LSRM Property Acquisitions, LLC ("LSRM"). Pursuant to the terms of this Plan, TSB shall receive no payment under this Plan and any vehicle titles held by TSB pursuant to Agreement shall be returned to the Debtor. The terms and conditions of the Guaranty shall remain in full force and effect.

The Class 5 Creditor is impaired under this Plan.

**Class 6 Claimants (Allowed Unsecured Claims)** are impaired and shall be satisfied as follows: All unsecured creditors shall share pro rata in the unsecured creditors pool. The Debtor shall make monthly payments commencing thirty (30) days after the Effective Date of $2,500[1] into the unsecured creditors' pool. The Debtor shall make distributions to the Class 6 creditors every 90 days commencing 90 days after the first payment into the unsecured creditors pool. The Debtor shall make to 60 payments into the unsecured creditors pool.

The Class 6 creditors are impaired.

**Class 7 (Current Owners)** are not impaired under the Plan and shall be satisfied as follows: The current owner will receive no payments under the Plan, however, he will be allowed to retain his ownership in the Debtor.

Class 7 Claimant is not impaired under the Plan.

## ARTICLE VII
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the business to fund the Plan.

## ARTICLE VIII.
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the historical operations of the business prior to the COVID-19 shutdown and current operations. Based upon the projections, the Debtor believes the Plan to be feasible.

## ARTICLE IX
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

---

[1] This amount is based upon the Debtor projection of net disposable income under 11 U.S.C. §1191(d).

**DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE DATED JUNE 24, 2021 - Page 11**

## ARTICLE X.
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtor owes approximately $40,000 in tax claims and approximately $450,000 in secured claims. Claims to the secured creditors and the tax creditors must be paid prior to the unsecured creditors receiving any payment. The Debtor has insufficient assets to cover the amounts to the tax and secured creditors which must be paid before unsecured debts, and therefore, a liquidation would result in no distribution to the unsecured creditors.

A liquidation analysis is attached hereto as Exhibit "B".

## ARTICLE XI
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected. The Debtor currently has an lease space at its facility with rent $8,750 per month. The Debtor specifically assumes that lease under the terms of this Plan..

## ARTICLE XII
## EVENTS OF DEFAULT AND EFFECT THEREOF

Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within fifteen (15) days of receipt of written notice of such default to Reorganized Debtor at Robert Morales at roveeagle@msn.com. The Debtor will be entitled to no more than two (2) notice of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated.

## ARTICLE XIII
## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE XIV
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

## ARTICLE XVI
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS**.

## ARTICLE XVII
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor does not believe it has any litigation which could be pursued to result in a larger dividend to the creditors than what is proposed under this Plan.

Dated: June 24, 2021.

Respectfully submitted,

LS Motorcars, LLC.

  /s/ Robert Morales
By: Robert Morales
Its: Managing Member

EXHIBIT 'B'

LIQUIDATION ANALYSIS

|  | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| ASSETS | | |
| Cash | 50,000 | 5,000 |
| Office Furniture | 1,000 | 1,000 |
| Inventory | 70,000[2] | 100,000 |
| A/R | 300,000[3] | 500,000 |
| | | |
| LIABILITIES | | |
| ADMINISTRATIVE | 25,000 | 25,000 |
| TAX CREDITORS | 40,000 | 40,000 |
| SECURED CREDITOR | 450,000 | 450,000 |
| UNSECURED CREDITORS | 2,000,000 | 2,000,000 |
| | | |
| DISTRIBUTION TO UNSECURED | 0% | 8% |

---

[2] Debtor has 55 vehicles on the property today however there are only 5 vehicles that are owned by the Debtor. All others are subject to liens or owned by third parties.

[3] This number represents the face value of the Buy Here Pay Here notes, however, in a Chapter 7 proceeding the Trustee would be required to try and maintain the accounts to recognize the full value and many of the customers would stop paying once the facility is closed resulting in extra costs in locating and repossessing the vehicles.